Ruth C. BROWN

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare.

No. CA 3–74–95–C.

United States District Court,
N. D. Texas,
Dallas Division.

Nov. 21, 1974.

Frank W. Stenger, Dallas Legal Services Foundation, Dallas, Tex., for plaintiff.

Frank D. McCown, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

The plaintiff, Mrs. Ruth Brown, asks the Court to review a final decision by the Secretary of Health, Education and Welfare which denied her claim for a period of disability (disability freeze) and for monthly disability insurance benefits under the Social Security Act.[1] Jurisdiction in this matter is provided the Court through 42 U.S.C. Section 405(g), as amended. The plaintiff filed her initial application for a period of disability benefits on November 1, 1972, alleging that she became unable to work in October, 1972. Mrs. Brown made her claim for physical disability under Sections 216(i) and 223[2] of the Social Security Act, asserting that numerous major surgical operations, her advanced age, lack of schooling and inherent malfunctions of her body have prevented and still prevent her from engaging in either her prior types of employment or in any "other substantially gainful employ-

---

1. 42 U.S.C. Section 423, as amended.

2. Sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C. 416(i) and 423(d), define the term "disability" to provide, in part:

   "(d)(1) The term 'disability' means—

   "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *

   * * * * *

   "(2) For purposes of paragraph (1)(A)—

   "(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

   "(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

   * * * * *

   "(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

ment." This initial application for disability benefits was denied Mrs. Brown, as were her appeals for reconsideration of that judgment to the Bureau of Hearings and Appeals and the Appeals Council. Consequently, Mrs. Brown's case arrives before this Court for a determination of whether the Administrative Law Judge's denial of Mrs. Brown's claim was supported by "substantial evidence", a standard which calls for more than a "scintilla of evidence", enough for a reasonable mind to accept as adequate support. See, Breaux v. Finch, 421 F.2d 687 (5th Cir. 1970) and Hemphill v. Weinberger, 483 F.2d 1137, 1139 (5th Cir. 1973).

## I. Mrs. Brown's Medical History

Mrs. Brown's medical history is as well chronicled as a trial transcript. Unfortunately for her, it covers the gamut. All together, she has had nine major operations since her adult life began, most of which have involved the partial or total removal of vital body organs. The list since 1945 includes the loss of her right lung due to pulmonary tuberculosis, the removal of eight ribs, the loss of some parts of her intestines and gall bladder, and finally surgical removals of her uterus and several fistulas of her rectum.

The beginning of her physical problems was certainly not inauspicious. In 1943, her first severe problem arose with the discovery of her having tuberculosis. This discovery led to her having thoracoplasty, or lung surgery, performed in 1945 to remove her infected right lung and portions of eight adjoining ribs. That surgery caused her to be bedridden for two years immediately thereafter, and in addition caused her to be hospitalized in sanitariums in 1947, 1949, 1951 and 1957 for hemorrhaging which re-occurred periodically then and still gives her problems today. Needless to say, the result of this illness has left Mrs. Brown very short of breath.

The pulmonary infection apparently gave rise to other problems as well, for the plaintiff. Her rectal difficulties were originally linked with her tuberculosis; eventually those difficulties of the 1940's led to additional later operations for the removal of fistulas. Mrs. Brown's pulmonary infections also contributed directly to her hernias of the rectum and intestine, disorders which she had corrected by surgery in October, 1967. Although these operations corrected the plaintiff's major disorders, they have not eliminated the practical problems with which Mrs. Brown still must contend. For example, Mrs. Brown testified in her transcript that she no longer can hold her bowel movements; whenever she feels the necessity, she must immediately go to a bathroom.

The plaintiff has also had medical complications other than in the nature of major surgery. During her testimony at the administrative hearings, she related how her knees become easily swollen and prevent her from doing much else than idling her time around her home. In his report on Mrs. Brown's disabled condition to the Health, Education and Welfare Department, Dr. Roberts remarked that her knees are somewhat enlarged and that there is some crepitation (grating) with passive movements in her knees. Dr Roberts did not emphatically state that Mrs. Brown's knees were arthritic, but he did admit that some degree of osteoarthritis may be present due to the plaintiff's extreme difficulty in kneeling or even stooping. Mr. L. Holley, an interviewer for the Social Security Administration, also observed that Mrs. Brown's legs have visible varicose veins which in several places are large and very much protruding.

Dr. Roberts, in his report, also mentioned other medical maladies afflicting Mrs. Brown. An EKG performed upon the plaintiff indicated evidence of heart disease. Aside from specific heart problems, the plaintiff also complains of hy-

pertension and chronic headaches, recurring conditions for which she has taken heavy doses of medicine. Her visits to Parkland Memorial Hospital and other medicinal treatment are substantiated in the hospital records entered by Doctors Lee and Kibler.

After reviewing Mrs. Brown's medical report, a record replete with continuing medical attention, surgery, defective organs and long hospital stays, the Court has come to conclude that the Administrative Law Judge's denial of benefits to the plaintiff was not supported by substantial evidence. This Court does not attempt to reweigh the evidence presented in the hearings below. Nevertheless, it cannot help but recognize the debilitating effect that an accumulation of severe illnesses, surgeries, and physical deficiencies have upon any body, including the plaintiff's. The human body can only withstand so much illness or sickness before it can no longer function in its regular capacity. The Court feels that Mrs. Brown's physical condition has reached that point, a point at which one simply asks what job can Mrs. Brown regularly perform in her deteriorated physical state. The answer is a simple one. There are no "substantially gainful" employment opportunities open to the plaintiff in her condition.

The plaintiff's educational background, past employment record and age also support that conclusion. Born in a small rural town in Mississippi in 1922, Mrs. Brown lived there until she reached the age of twenty-two when she moved to Texas with her husband. Having completed only nine years of formal education, the plaintiff was forced to accept physically demanding and unskilled jobs the rest of her life.

Her rather limited work experience began in 1941 as a riveter. She continued in this job until 1943 when her severe tuberculosis problem forced her to quit. The plaintiff remained out of the work force until 1963, when her husband's own physical disabilities compelled him to accept an early retirement. Mrs. Brown attempted to supplement their family income which included only Mr. Brown's disability payments by working as a power sewing machine operator from 1963 until 1966. Once again her poor health forced her to quit this job. Her nervous condition, a hysterectomy, and intestinal operation combined to keep her out of the employment market until 1969 when she accepted a job as a store clerk in a ladies' sportswear warehouse. Due to the 45° curvature of her deformed spine and her other ailments, the heavy loads of clothing Mrs. Brown had to lift and carry caused her excessive strain and forced her to leave that job in 1972. She has not worked since.

Altogether her three jobs have only given her experience in unskilled, difficult work, the type for which Mrs. Brown's physical condition is no longer capable of performing. Furthermore, due to the limitations of a ninth grade education and a lack of on-the-job training Mrs. Brown had no transferable skills or direct experience which would have qualified her for any type of sedentary job proposed by the Hearing Examiner or Administrative Law Judge. Consequently, the Court finds that those officials did not have substantial evidence before them to conclude that the plaintiff's background and physical condition enabled her to be "gainfully employed." Judgment will be rendered sustaining plaintiff's motion for summary judgment and denying that of the Secretary.